IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| THOMAS JOHN MALUSA, <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | No. CV 07-655-TUC-CKJ (CRP) <br><br><br><br> **ORDER** |

On March 2, 2009, Magistrate Charles R. Pyle issued a Report and Recommendation [Doc. #17] in which he recommended that Plaintiff's Motion for Summary Judgment [Doc. #7] be denied and Defendant's Cross-Motion for Summary Judgment [Doc. #13] be granted. On March 19, 2009, Plaintiff Thomas John Malusa ("Malusa") filed Objections to Report and Recommendation [Doc. #18]. The Commissioner has not filed a response.

*Magistrate Judge's Recitation of the Procedural and Factual History*

No objections having been made to the magistrate judge's recitation of the procedural and factual history, the Court adopts those recitations.

*Standard of Review*

This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations

omitted). The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

Substantial evidence is "more than a mere scintilla, but is less than a preponderance." *Id.* (internal quotations and citations omitted); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney*, 981 F.2d at 1019); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). Moreover, the court may not focus on an isolated piece of supporting evidence, rather it must consider the entirety of the record weighing both evidence that supports as well as that which detracts from the Secretary's conclusion. *Tackett*, 180 F.3d at 1098 (citations omitted).

*Residual Functional Capacity*

Malusa asserts that the Magistrate Judge improperly affirmed the Administrative Law Judge's ("ALJ") evaluation of his mental condition. Specifically, Malusa asserts that the Magistrate Judge improperly affirmed the ALJ's evaluation of the opinions of Dr. Sanchez, Dr. Biggan and Dr. Volkerts. The Commissioner argued in his Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Opposition") that the ALJ's finding regarding Malusa's residual functional capacity ("RFC") was free of legal error and supported by substantial evidence. The Magistrate Judge found that the ALJ "presented clear reasons for finding Plaintiff had the mental RFC to perform his past relevant work" and that his reasoning was supported by "substantial evidence from the record." [R & R at 20.]

RFC is "the most [a claimant] can do despite [his] limitations." C.F.R. § 404.1545(a)(1). RFC is used at step four of the five step disability analysis to determine

whether or not a claimant can perform their past relevant work. C.F.R. § 404.1545(a)(5). RFC is an administrative determination. C.F.R. § 404.1546(c). The Ninth Circuit Court of Appeals unequivocally recognizes that "it is the responsibility of the ALJ, not the claimant's physician to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Furthermore, the ALJ's factual findings are conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

In assessing mental impairments the ALJ must assess functional limitations in four broad areas including activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. 404.1520a(c)(3).

In this case, the ALJ found that Malusa's mental condition causes:

> moderate limitation in the ability to respond appropriately to work pressures in a usual work setting, slight limitations in the ability to understand, remember and carry out detailed instructions; interact appropriately with supervisors and co-workers and respond appropriately to changes in a routine work setting; no limitations in the ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions and interact appropriately with the public.

[Administrative Record ("A.R.") at 29.] Malusa is able to attend to his own personal hygiene, cook, and perform household chores such as light cleaning, laundry, and occasional yard cleaning. [A.R. at 44, 46, 242.] Malusa performs daily routines, including having coffee in the morning, watching the news, organizing his day, grocery shopping and attending appointments. [A.R. at 46.] Additionally, Malusa maintains a social life, visiting friends, going out to dinner and swimming in his pool. [A.R. at 46, 244, 524.] Finally, the ALJ noted a lack of evidence in the medical records of episodes of decompensation. [*See* A.R. at 21-3.]

Malusa argues that Dr. Sanchez's opinions are irreconcilable with the ALJ's findings that Malusa could do the work of a President (any industry) as defined by the Dictionary of Occupational Titles ("DOT"). DOT § 189.117-026. Malusa improperly characterizes the Magistrate Judge's characterization of this issue as a "close[] question." The Magistrate Judge actually stated "[w]hether Plaintiff has the mental RFC to perform his past relevant

work as a company president is the closest question in this case." [R & R at 19.] Dr. Sanchez opined that Malusa had a "slight" limitation regarding his ability to understand, remember and carry out detailed instructions. [A.R. at 520.] If the degree of limitation is "none" or "mild" (i.e., "slight") in the areas of activities of daily living, social functioning, and concentration, persistence or pace, and "none" with regard to episodes of decompensation, the Commissioner will "generally conclude that [a claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than minimal limitation in your ability to do basic work activities." C.F.R. § 404.1520(a).

Malusa also argues that Dr. Sanchez's opinion that Malusa had a "moderate limitation in the ability to respond appropriately to work pressures in a usual work setting" cannot be reconciled with the ALJ's RFC determination. Similarly, Malusa argues that Dr. Biggan's opinions and Dr. Volkert's records are incompatible with the ALJ's RFC determination. Mild or moderate depression or moderate limitations in several areas of mental process are not sufficiently severe non-exertional limitations to limit a claimant's ability to do work beyond the exertional limitation. *Hoopai v. Astrue*, 499 F.3d 1071 (9th Cir. 2007) (recognizing moderate limitations in ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, complete a normal workday and workweek without interruption, and to perform at a consistent pace without an unreasonable number and length of rest periods are not evidence of disabling limitations and ALJ did not err by relying on the Medical-Vocational Guidelines ("the Grids") in step five analysis). The ALJ determined that Malusa possessed a residual functional capacity to perform light work, including "the ability to lift/carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk 6 hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for 6 hours in an eight hour workday with alternation of positions from sitting and standing provided sufficiently with normal breaks and with no climbing ladders, ropes or scaffolds, avoidance of concentrated exposure to airborne irritants and hazards." [A.R. at 29.]

Viewing the record as a whole, substantial evidence supports the ALJ and Magistrate Judge's conclusions. Malusa's limitations did not preclude him from successfully presiding over the renovation of a ten apartment complex after his accident. This project required management and problem-solving, as well as interaction with hired contractors. In reaching his conclusion, the ALJ provided specific reasons for his decisions which were supported by substantial evidence from the record. This Court finds that there were no clear errors of law and that substantial evidence supports the ALJ's determination.

*Performance of Past Relevant Work*

Malusa contends that his renovation work on a ten-unit building in October 2005 does not constitute "past relevant work" after his alleged onset date. Malusa further argues that the project "did not reasonably establish his mental ability to perform the highly skilled Dictionary of Occupational Titles (DOT) job the ALJ found he could do on a full time basis." [Pl.'s Objs. to R & R at 6:6-8.] The DOT description for "President (any industry)" is as follows:

> Plans, develops, and establishes policies and objectives of business organization in accordance with board directives and corporation charter: Confers with company officials to plan business objectives, to develop organizational policies to coordinate functions and operations between divisions and departments, and to establish responsibilities and procedures for attaining objectives. Reviews activity reports and financial statements to determine progress and status in attaining objectives and revises objectives and plans in accordance with current conditions. Directs and coordinates formulation of financial programs to provide funding for new or continuing operations to maximize returns on investments, and to increase productivity. Plans and develops industrial, labor, and public relations policies designed to improve company's image and relations with customers, employees, stockholders, and public. Evaluates performance of executives for compliance with established policies and objectives of firm and contributions in attaining objectives. May preside over board of directors. May serve as chairman of committees, such as management, executive, engineering, and sales.

DOT § 189.117-026. The DOT categorizes this position as a sedentary one. *Id.* It also categorizes the position as one that requires General Education Development ("GED") Level 5 reasoning development. *Id.* The GED levels "embrace[] those aspects of education (formal

and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective." DOT App. C § III. Level 5 reasoning requires applying "principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions." *Id.* It also requires "[i]nterpret[ing] an extensive variety of technical instructions in mathematical or diagrammatic form[] [and] [d]eal[ing] with several abstract and concrete variables." *Id.*

Malusa testified that he was the managing member of the LLC which owned the ten-plex unit and was primarily responsible for its restoration. [A.R. at 78, 81.] He argues, however, that this relatively small project does not equate with the work that he had previously performed with his former company or the job of President as outlined by the DOT. The smaller renovation, from which he made a fifty thousand dollar ($50,000.00) profit, did require him to plan business objectives, hire personnel, define problems and determine solutions, pay employees and manage other financials in furtherance of his business goals. There is no evidence in the medical records indicating a change in medication or treatment was necessary to enable Malusa to complete the renovation project. Moreover, the ALJ's analysis is not based on a determination that Malusa will return to a specific job. The smaller renovation project utilized the skills Malusa gained in his past work experience and those described in the DOT position.[1]

Additionally, Malusa argues that the Magistrate Judge's distinction of *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985) and *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008) was in error. Malusa described his work as president of T.M. Building and Development, the company that he sold prior to the accident, as one in which he spent ninety (90) percent of his time supervising people. [A.R. at 249.] Malusa supervised

---

[1] The Court notes that the DOT description does not contain a size requirement, it pertains equally whether the job is for a President of a seventy person company or a five person company.

fifty (50) to seventy (70) employees, this included ten to fifteen office employees, thirty to forty-five filed employees and approximately fifteen subcontractors. [A.R. at 216.] Malusa's responsibilities included overseeing management staff, bidding on jobs and writing reports. [A.R. at 55, 248-49, 256-57.] Malusa also described carrying ladders and lifting other equipment or materials while on the job. [A.R. at 249.]

The Magistrate Judge provided a clear and comprehensive summary of *Valencia* and *Carmickle*. [R & R at 17.] As discussed in the R & R, both of those cases involved assessments by the ALJ which focused on what was unequivocally a small or smaller part of the claimant's previous job duties in the assessment of their disability. *Id.* Here, unlike the *Valencia* and *Carmickle* claimants, Malusa described the degree of supervisory/management duties he performed as constituting ninety percent of his time. Furthermore, these duties included managing office and field personnel, as well as subcontractors. Based on Malusa's description, the ALJ characterized Malusa's supervisory/management duties as extensive. As such, the Magistrate Judge correctly distinguished *Valencia* and *Carmickle* from the instant case.

Accordingly, after an independent review, IT IS ORDERED:

1. The Report and Recommendation [Doc. #17] is ADOPTED;
2. Plaintiff's Motion for Summary Judgment [Doc. #7] is DENIED; and
3. Defendant's Motion for Summary Judgment [Doc. #13] is GRANTED.
4. The Clerk of the Court shall enter judgment in this matter, and close its file.

DATED this 24th day of August, 2009.

_____
Cindy K. Jorgenson
United States District Judge